IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES FREDERICK LEWIS,
    Petitioner,

vs.                                                      Case No.: 3:14cv350/MCR/EMT

JULIE L. JONES,[1]
    Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

        This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1). Respondent filed an answer and relevant portions of the state court record (doc. 10). The court provided Petitioner an opportunity to file a reply (*see* doc. 13), but he has not done so as of the date of this Report and Recommendation.

        The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

        The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 10).[2] Petitioner was charged in the Circuit Court in and for Escambia County,

---

[1] Julie L. Jones succeeded Michael D. Crews as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 10). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2010-CF-1763, with one count of attempted first degree premeditated murder with a firearm (Ex. A at 5). A jury found him guilty of attempted second degree murder (*id.* at 44–46, Ex. B). The jury additionally found that Petitioner actually possessed and discharged a firearm in the course of committing the attempted second degree murder, and that Petitioner caused great bodily harm to the victim by discharging the firearm (*id.*). The court adjudicated Petitioner guilty and sentenced him, pursuant to the "10/20/Life" sanction, to life imprisonment, with a 25-year minimum mandatory and with pre-sentence jail credit of 304 days (Ex. A at 48–53, 77–84). Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D11-1480 (Ex. C). On May 17, 2012, the First DCA affirmed the conviction and sentence per curiam without written opinion (Ex. E). Lewis v. State, 86 So. 3d 1119 (Fla. 1st DCA 2012) (Table).

On July 23, 2012, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. F at 1–27). He subsequently filed a Second Amended motion (*id.* at 62–91). The state circuit court summarily denied the motion in an order rendered November 4, 2013 (*id.* at 123–36). Petitioner appealed the decision to the First DCA, Case No. 1D13-5932 (Ex. G). The First DCA affirmed the decision per curiam without written opinion on March 19, 2014, with the mandate issuing April 15, 2014 (Ex. I). Lewis v. State, 134 So. 3d 954 (Fla. 1st DCA 2014) (Table).

Petitioner filed the instant federal habeas action on July 23, 2014 (doc. 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case No.:  3:14cv350/MCR/EMT

Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law

occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291–92. Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011); *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III. PETITIONER'S CLAIMS

    A.    <u>Ground One: "Trial court erred in prohibiting defense from eliciting relevant testimony from victim in regards to his gang affiliation—contrary to Petitioner's rights to due process as guaranteed by the Fourteenth Amendment of the U.S. Constitution."</u>

To provide context for his claim, Petitioner summarizes his own trial testimony, as well as the trial testimony of the victim, Antonio Bradley (doc. 1 at 5–8). His summary is an accurate description of the testimony; therefore, it will be repeated here.

Mr. Bradley testified that on the night of the shooting, he traveled to visit his girlfriend, Emma Broughton. He testified that when he arrived at her apartment building, he noticed that Petitioner, who was Ms. Broughton's next door neighbor, was standing at the bottom of the stairs

leading up to the second floor, where Ms. Broughton lived. Bradley testified that as he started up the stairs, Petitioner asked him why he was "looking at him crazy." Bradley testified he proceeded up the stairs, and Petitioner followed him. Bradley testified that when he reached the door to Ms. Broughton's apartment, he and Petitioner exchanged a few words, and Petitioner became enraged and pulled a firearm from his jacket. Bradley testified he put his arms up in the air, and the duffle bag he was carrying slid from his shoulder. He testified that when he attempted to bend over to retrieve the duffel bag, Petitioner shot twice, hitting him once in the neck. During cross-examination, defense counsel attempted to question Bradley about a tattoo on his neck, but the prosecutor objected on relevancy grounds. The trial court sustained the prosecutor's objection.

  Petitioner testified on his own behalf. He testified that as he returned from checking his mail box, he noticed a black Impala parked in the spot vacated by his girlfriend. Petitioner testified as he walked up the stairs and reached the breeze way, he saw Antonio Bradley talking to the (male) driver of the Impala. Petitioner testified he saw a duffle bag open on the floor, which contained Ziploc bags of what appeared to be marijuana. Petitioner testified he told the men to "get this shit from in front of my door," and Bradley responded, "You don't tell me what to do." Petitioner testified he and Bradley exchanged several more words, and he (Petitioner) then went inside his apartment. Petitioner testified that approximately 45 minutes later, Bradley knocked on his door. Petitioner testified he opened the door and asked, "What's up?" Bradley responded, "You know what's up. Trez Up, nigger. I'm gonna kill you. What, you the police?" Petitioner testified that "Trez Up" was a local gang associated with the "Blood" gang. He testified Bradley pulled out a gun, so he (Petitioner) grabbed Bradley. He testified the two of them ran into the wall and tussled over the gun. Petitioner testified that during the tussle, the gun went off approximately three times. On cross-examination, Petitioner testified that Bradley was a known gang member/drug dealer. He testified he was fighting for his life when the gun went off.

  Petitioner alleges, and the trial transcript confirms, defense counsel advised the court she had photographs depicting Antonio Bradley's tattoos and wished to call Bradley as a witness for the defense, to inquire about the meaning of his tattoos (doc. 1 at 7–8). The State again objected on relevancy grounds. Defense counsel proffered testimony from Bradley regarding his tattoos and possible gang affiliation. Bradley testified during the proffer that he was not affiliated with a gang.

The trial court ruled that defense counsel was not permitted to present testimony from Bradley regarding the meaning of his tattoos, because there was no relevant connection between the tattoos and the possibility that Bradley was a gang member. The court added that the testimony may have been relevant if defense counsel had presented expert testimony regarding gang affiliation, gang tattoos, and the like.

Petitioner contends the trial court's exclusion of Bradley's testimony violated his due process right to present witnesses in his own defense (doc. 1 at 8). He states he exhausted this claim by presenting it on direct appeal (*id.*). Petitioner contends the state court's adjudication of the claim was contrary to the Supreme Court's decision in Chambers v. Mississippi, 410 U.S. 284 (1973) (*id.*).

Respondent concedes Petitioner exhausted this ground in the state courts (doc. 10 at 11). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 11–24).

    1.  Clearly Established Federal Law

The Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (internal quotation and citation omitted). However, the Supreme Court has also recognized that "'state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.'" Holmes v. South Carolina, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (quoting United States v. Scheffer, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)). Only rarely has the Supreme Court held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence. Nevada v. Jackson, 133 S. Ct. 1990, 1992, 186 L. Ed. 2d 62 (2012) (citing Holmes, 547 U.S. at 331 (rule did not rationally serve any discernible purpose); Rock v. Arkansas, 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) (rule arbitrary); Chambers v. Mississippi, 410 U.S. 284, 302–303, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) (State did not even attempt to explain the reason for its rule); Washington v. Texas, 388 U.S. 14, 22, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) (rule could not be rationally defended)). The Supreme Court has said that Chambers "does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence." United States v. Scheffer, 523 U.S. 303, 316, 118 S. Ct.

1261, 140 L. Ed. 2d 413 (1998). Rather, due process considerations hold sway over state evidentiary rules only when the exclusion of evidence "undermine[s] fundamental elements of the defendant's defense." *Id.*, 523 U.S. at 315.

    2.  Federal Review of State Court Decision

The theory of defense presented at trial was that Petitioner acted in self-defense when he physically struggled with Bradley after Bradley threatened, "Trez Up, nigger, I'm gonna kill you," and pulled a gun on him. In furtherance of this defense, Petitioner testified as described *supra* (*see* Ex. B at 85–93). When Petitioner testified that Antonio Bradley said, "Trez Up, nigger," defense counsel asked him what "Trez Up" meant to him (*id.* at 89). Petitioner responded:

> That's like a local gang here in Pensacola, and I found out about that when I came. I was in jail, and they had this big thing in '09 here with Trez Up and the Blood gang. And he has it across his chest, and recently, I seen that before. And he said that to me.

(*id.*).

The prosecutor questioned Petitioner about his testimony suggesting Bradley was affiliated with a gang:

> Q. So you know he's in a gang, and according to you, he sells drugs. And so you come up there, you hear this talking, and you see a bag—a duffel bag of marijuana.
>
> A. Yes, sir.
>
> Q. So you say—by the door [sic], and you confront a known gang member who sells drugs?
>
> A. Yes, sir.
>
> Q. He pulls a gun on you, and you rushed a known gang member who sells drugs?
>
> A. Yes, sir.

(Ex. B at 104). At the conclusion of Petitioner's testimony, the attorneys and the trial judge conferred regarding defense counsel's desire to call Mr. Bradley as a witness and question him about

the meaning of his tattoos and whether he was affiliated with a gang (*id.* at 106).  Defense counsel proffered Bradley's testimony:

> Q.   . . . Mr. Bradley, there's been some testimony that you are a member of the Trez Up gang.  Is that true?
>
> A.   No, ma'am.

(Ex. B at 107).  Defense counsel showed Bradley photographs and asked whether they were photographs of him at the hospital (*id.*).  Bradley responded yes (*id.*).  Defense counsel asked if he had tattoos on his chest as depicted in the photographs, and Bradley responded yes (*id.* at 108).  Defense counsel continued:

> Q.   Now, what does that say?
>
> A.   "Tre."
>
> Q.   And what does—it looks like it's not quite complete.
>
> A.   Yes, ma'am.
>
> Q.   What does that mean?
>
> A.   "The Real is Ever."
>
> Q.   Pardon?
>
> A.   "The Real is Ever."  It's just—it's just saying the real is ever, like.
>
> Q.   "The Real is Ever"?
>
> A.   "The Real is Ever."  That really is everything.
>
> Q.   And what does it say down the side there?
>
> A.   It say [sic], "Hustling."  "Hustling."
>
> Q.   "Hustling"?  What does it say on the other side?  You can barely see that.
>
> A.   "Struggling."
>
> Q.   What does it say on the back of your neck?
>
> A.   "Player Made."
>
> Q.   What does that mean?
>
> A.   You just mess with a lot of women.
>
> Q.   So you're denying that you're a member of the Trez Up gang?
>
> A.   No, ma'am.  I ain't no gang member.

Case No.:  3:14cv350/MCR/EMT

(*id.* at 108–09).

The trial court sustained the State's objection:

Well, at this point, the Court finds that there's no relevant connection that's been shown. If you had a law enforcement officer or somebody that has expertise in gang affiliations, that sort of thing, that could relate to that, that's fine, but this is strictly speculative at this point so I'm not going to allow it.

(*id.* at 109). The photographs were marked for identification as Defense Exhibit No. 3 and are part of the state court record (*see* Ex. A at 158), but they were not admitted as evidence at trial.

On direct appeal, Petitioner argued that evidence of Bradley's tattoos and possible gang affiliation was relevant to the defense theory that Bradley placed Petitioner in imminent danger of losing his life or sustaining great bodily harm (Ex. C at 14–17). Petitioner argued that the trial court's refusal to allow the defense to present this evidence violated his constitutional right to present witnesses in his defense as recognized in Chambers v. Mississippi, 410 U.S. 284, 302 (1973) and Washington v. Texas, 388 U.S. 14, 19 (1997) (*id.*). The First DCA affirmed the conviction without explanation.

"[T]he summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also* Harrington, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision. *See* Harrington, 131 S. Ct. at 784. The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Case 3:14-cv-00350-MCR-EMT   Document 15   Filed 02/03/15   Page 12 of 20

Page 12 of 20

Three sections of Florida's Evidence Code provide the framework for evaluating questions of relevance. The general rule is that "[a]ll relevant evidence is admissible, except as provided by law." Fla. Stat. § 90.402. "Relevant evidence is evidence tending to prove or disprove a material fact." Fla. Stat. § 90.401. Relevant evidence is inadmissible, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." Fla. Stat. § 90.403. Florida's rules are akin to the widely accepted rules of evidence and related law that preclude the admission of irrelevant evidence, define the term "relevant," and limit even the admission of relevant evidence. *See* Fed. R. Evid. 401, 402, 403. The constitutional propriety of these rules cannot be seriously disputed.

Florida courts have considered the issue of the admissibility of evidence of gang affiliation, but only in the context of a defendant's alleged gang affiliation, not the victim's. Courts have determined that such evidence is admissible to explain disputed or unclear issues, such as premeditation, motive, or intent. *See* Milan v. State, 932 So. 2d 557, 558 (Fla. 3d DCA 2006) (evidence of defendant's gang membership and activities was admissible on issue of premeditation and intent and to rebut defendant's claim of self-defense); *see also* Reyes v. State, 783 So. 2d 1129, 1135 (Fla. 3d DCA 2001) (same). However, courts have limited the admission of evidence of gang activity where there is an insufficient connection between the defendant and the particular activity, and the probative value of such evidence is outweighed by its prejudicial effect. For example, in Doherty v. State, a Florida appellate court held that evidence regarding the defendant's gang membership, racial animus associated with the gang, and prior threats made by gang members to the victims, was inadmissible, because even though the defendant, who claimed he was acting in self defense, was said to be associated with the gang, no one identified him as having made any of the racial comments or having been involving in any of the prior threatening acts. 726 So. 2d 837, 838 (Fla. 4th DCA 1999). The court further found that admission of the evidence was prejudicial, because the jury was reasonably likely to have found from the evidence that the defendant did not act defensively but instead aggressively and provocatively. *Id.*

In Petitioner's case, the defense wished to offer Bradley's testimony and the photographs of his tattoos to prove that Bradley was affiliated with a gang, and thus was aggressive and provocative, and had a reputation for violence, to support Petitioner's theory that either (1) Petitioner reasonably

believed deadly force was necessary to prevent imminent death or great bodily harm to himself, or (2) he reasonably believed that such conduct was necessary to defend himself against Bradley's imminent use of unlawful force against him, and the use of unlawful force by Bradley appeared to Petitioner to be ready to take place.[4]  However, as evidenced by the proffer, the excluded evidence had no tendency to prove that Bradley was in a gang.  If the defense had been permitted to call Bradley as a witness, he would have testified that the photographs were of his tattoos, that one of the tattoos was "TRE," that "TRE" stood for the phrase "The Real is Ever," that the phrase meant

---

[4] As the jury was instructed:

> An issue in this case is whether the defendant acted in self-defense.  It is a defense to the offense with which the defendant is charged if the injury to Antonio Bradley resulted from the justifiable use of deadly force.  Deadly force means force likely to cause death or great bodily harm.
>
> The use of deadly force is justifiable only if the defendant reasonably believed that the force is necessary to prevent imminent death or great bodily harm to himself while resisting another's attempt to murder him or any attempt to commit aggravated battery upon him. . . .
>
> A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another.
>
> In deciding whether the defendant was justified in the use of deadly force, you must judge him by the circumstances by which he was surrounded at the time the force was used.  The danger facing the defendant need not have been actual.  However, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force.  Based upon appearances, the defendant must have actually believed that the danger was real.
>
> . . . .
>
> It is a defense to the offense with which the defendant is charged if the injury to Antonio Bradley resulted from the justifiable use of nondeadly force.  Nondeadly force means force not likely to cause death or great bodily harm.
>
> The defendant would be justified in using nondeadly force against Antonio Bradley if the following two facts are proven:  First, the defendant must have reasonably believed that such conduct was necessary to defend himself against Antonio Bradley's imminent use of unlawful force against the defendant; and secondly, the use of unlawful force by Antonio Bradley must have appeared to the defendant to be ready to take place.
>
> . . . .
>
> In deciding whether the defendant was justified in the use of nondeadly force, you must judge him by the circumstances by which he was surrounded at the time the force was used.  The danger facing the defendant need not have been actual.  However, to justify the use of nondeadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force.  Based upon appearances, the defendant must have actually believed that the danger was real.

(Ex. B at 147–50).

Case No.: 3:14cv350/MCR/EMT

"that really is everything," and that he was not a member of the Trez Up gang or any gang. Because the excluded evidence had no tendency to prove that Bradley was in a gang, it was of no consequence in determining whether Petitioner acted in self-defense.

Furthermore, exclusion of the evidence did not undermine fundamental elements of Petitioner's defense. Bradley would have denied membership in the gang; therefore, his testimony would not have been favorable to the defense. Additionally, the defense was able to present evidence, through Petitioner's testimony, that Bradley was in a gang and sold drugs, that Bradley instigated the confrontation with Petitioner, that Bradley threatened to kill Petitioner and then pulled a gun on him, that Trez Up was a local gang, that Bradley said, "Trez Up" prior to threatening to kill Petitioner, and that Bradley "has it across his chest" (Ex. B at 89–91, 103–04). The defense was also able to reenact Petitioner's version of the confrontation with Bradley (*id.* at 91–93). Therefore, the trial court did not deny Petitioner a fair opportunity to defend himself.

No fairminded jurist could think that <u>Holmes</u>, <u>Rock</u>, <u>Chambers</u>, <u>Washington</u>, or any decision of the Supreme Court clearly establishes that the state court's application of the Florida evidence rules in this case was inconsistent with the Constitution. Therefore, Petitioner failed to demonstrate he is entitled to federal habeas relief on Ground One.

> B.   <u>Ground Two:  "Trial counsel was ineffective in [her] failure to investigate and present expert witness containing knowledge of gang affiliation—violating Petitioner's rights to effective assistance of counsel, due process, and a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution."</u>

Petitioner claims that defense counsel was ineffective for failing to investigate and present expert testimony regarding gang affiliation to lay a foundation for admission of the excluded evidence of Bradley's alleged gang affiliation (*i.e.*, Bradley's testimony regarding his tattoos and the photographs of the tattoos) (doc. 1 at 11–13). Petitioner contends if counsel had called an expert to lay a foundation for the photographs of Bradley's tattoos and Bradley's testimony, the trial court would have admitted that evidence, and there is a reasonable probability the jury would have found that his version of self-defense was credible (*id.* at 13–14). Petitioner states he raised this claim in Ground 2 of his Rule 3.850 motion (*id.* at 14). He contends the state court's adjudication of the claim was contrary to and an unreasonable application of <u>Strickland v. Washington</u>, 466 U.S. 688 (1984) (*id.*).

Respondent concedes Petitioner exhausted this ground in the state courts (doc. 10 at 25). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 25–32).

   1.   Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Id. (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting Strickland's high bar is never an easy task."  Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  Richter, 131 S. Ct. at 788.  As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating

unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id.* (citations omitted).

      2.    Federal Review of State Court Decision

Petitioner presented this issue as Ground 2 in his Rule 3.850 motion (Ex. F at 70–72). The state circuit court correctly stated the deficient performance and prejudice prongs of the Strickland standard as the applicable legal standard (*id.* at 124). The court adjudicated the claim as follows:

> **Ground 2: trial counsel failed to "build the defense."**
>
> In this ground for relief, Defendant has several complaints. Defendant claims that counsel should have: 1) contacted the victim's probation officer "to see if they had any information as to whether [the victim] had any known gang ties;" 2) contacted law enforcement agencies to gather information about gang names and slogans in order to lay a foundation for evidence to be presented at trial that the victim had gang-related tattoos; 3) "probe out any possible person(s)" in the victim's neighborhood to develop information that the victim was in a gang; 4) inquired of medical personnel if the victim could have been the aggressor (addressed in Ground 4); 5) obtained a ballistics expert to testify about bullet holes (addressed in Ground 3); and 6) presented "factual backing to support this defense theory."
>
> Defendant's claims are lacking factual detail and therefore, they are denied as facially insufficient. Additionally, several of Defendant's claims are concededly speculative, for example, where he alleges that it is merely possible that the victim's probation officer or someone from the neighborhood could have provided additional information. Defendant cannot prove that he was prejudiced by any inaction by counsel because he cannot demonstrate that further investigation would have produced any information or testimony that would have changed the outcome of the proceedings.
>
> Moreover, defense counsel attempted to present evidence at trial that the victim had gang-related tattoos, but after a proffer of testimony, the Court found that the testimony about the tattoos was improper.[FN 5] Even if defense counsel had a law enforcement officer available to testify at trial about local gangs, in order to lay the foundation for testimony that the victim had gang related tattoos, the Court finds that such testimony would not have made a difference in the outcome of the proceeding and therefore, Defendant was not prejudiced by the lack of this testimony.[FN 6] "The likelihood of a different result must be substantial, not just

conceivable." Harrington v. Richter, 131 S. Ct. 770, 791–792 (2011) (citations omitted). Defendant is not entitled to relief on this claim.

> [FN 5: See Attachment 4, trial transcript excerpts, pp. 26 and 105–109.]
>
> [FN 6: As the prosecutor noted, "If [the victim] is or is not in a gang, it doesn't matter. He can't get shot in the back of the neck." See p. 106.]

(Ex. F at 125–26). The First DCA affirmed the circuit court's decision (*see* Ex. I).

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference. Chandler, 218 F.3d at 1314 n.14 (11th Cir. 2000) (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)). If the record is not complete regarding counsel's actions, then the courts should presume "that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some reasonable lawyer might do." *Id.* at 1314–15 n.15. "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." Waters, 46 F.3d at 1514. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).

Petitioner did not proffer to the state court any reliable evidence, in the form of an affidavit or otherwise, that further investigation by defense counsel would have produced testimony that either Antonio Bradley or any of his tattoos was affiliated with a gang. Petitioner's speculative assertions that such evidence existed are insufficient to show that defense counsel's failure to investigate and present it was unreasonable. Additionally, Petitioner failed to show a reasonable probability that the outcome of his trial would have been different if counsel had investigated Bradley's alleged gang affiliation. Therefore, the state court's adjudication of this claim was not contrary to or an unreasonable application of Strickland.

IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court shall modify the docket to reflect that Julie L. Jones is substituted for Michael D. Crews as Respondent.

And it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (doc. 1) be **DENIED**.
2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 3rd day of February 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).